UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

The General Retirement System of
the City of Detroit and the Police
and Fire Retirement System of the
City of Detroit,

Case No. 14-cv-10032
Hon. Judith E. Levy
Mag. Judge Mona K. Majzoub

Plaintiffs,

v.

Alamerica Bank, Alamerica
Bancorp, Inc., and Lawrence Tate,

Defendants.

_____/

**OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [29]**

The General Retirement System of the City of Detroit and the Police and Fire Retirement System of the City of Detroit ("plaintiffs") brought claims against Alamerica Bank, Alamerica Bancorp, Inc., and Lawrence Tate ("defendants"), generally alleging that defendants made fraudulent misrepresentations related to the financial status of Donald Watkins, a non-party, which plaintiffs relied on to make a thirty-million-dollar loan to their detriment. (*See* Dkt. 1.)

Before the Court is defendants' motion for summary judgment. (Dkt. 29.) Defendants argue that they acted as agents of Watkins in the relevant transaction and are thus subject to a consent decree that plaintiffs signed in the previous case against Watkins and Watkins Aviation, LLC, ("Consent Decree"), generally involving the same transaction. (*See id.* at 13-16.) In relevant part, the Consent Decree ordered "the release, waiver, and discharge of the Watkins Parties and their members, officers, agents, and attorneys from any potential claims by [plaintiffs] based on any dealings, facts and/or circumstances that arose before entry of [the] Consent Decree or that are related to collection activities," ("Release").[1] (Dkt. 40-20 at 8.)

Plaintiffs oppose the motion, arguing that there is no genuine issue of material fact that defendants acted independently and not as Watkins' agents, there is no genuine issue of material fact that defendants were not within the scope of the Release even if they were

---

[1] Defendants did not attach the Consent Decree to their motion, claiming that it is "governed by a Protective Order . . . , but can be made available to the Court if there is a dispute as to the contents of the Release." (Dkt. 29 at 2.) Plaintiffs note that to the contrary, the Consent Decree "is a public document, filed with (and entered by) the court in" *Police and Fire Retirement System of the City of Detroit* et al. *v. Donald V. Watkins and Watkins Aviation, LLC*, No. 08-cv-12582 (E.D. Mich. filed June 17, 2008). (Dkt. 40 at 12-13.) Plaintiffs included the full Consent Decree as Exhibit I of their response. (*See* Dkt. 40-20.)

agents, and, in the alternative, there is a genuine issue of material fact in dispute on these issues. (Dkt. 40 at 26-27.) For the reasons set forth below, defendants' motion is denied.

## I. Background

This is the second case brought by plaintiffs based on a loan they made that went into default. In the first case, brought against Donald Watkins, Sr. and his company Watkins Aviation, LLC, plaintiffs generally alleged that Watkins made material misrepresentations regarding his financial condition that induced plaintiffs to make the loan, which subsequently went into default. (*See* Dkt. 29 at 10; Dkt. 40 at 12, 18-19.) In this case, plaintiffs allege that defendants assisted Watkins in fraudulently misrepresenting his financial condition.

According to plaintiffs, defendants sent multiple bank letters to plaintiffs' designated representative in early 2008 regarding Watkins' financial condition and capacity. (*See* Dkt. 40 at 13.) These letters "specifically concerned, and verified, Watkins' ability to personally guarantee the contemplated $30 million loan transaction and/or to meet his personal financial commitments." (*Id.*) Plaintiffs allege that the bank letters "each contained material misrepresentations regarding

3

Watkins' financial condition and capabilities," which plaintiffs relied on in making the loan. (*Id.* at 16-17.) Whether plaintiffs can establish their claims against defendants is not at issue here. Rather, defendants argue that they are entitled to summary judgment based on release.

Under the Consent Decree, plaintiffs agreed to "the release, waiver, and discharge of the Watkins Parties and their members, officers, agents, and attorneys from any potential claims by [plaintiffs] based on any dealings, facts and/or circumstances that arose before entry of [the] Consent Decree or that are related to collection activities." (Dkt. 40-20 at 8.) Defendants argue that as "agents" of Watkins, they are "included within the scope of the Release," and plaintiffs are thus barred from bringing this suit. (Dkt. 29 at 9.) Defendants argue that the inclusion of a release for all "companies and agents" in the first version of the Consent Decree, its exclusion in the second version (proposed by plaintiffs), and its inclusion again in the final version, confirms that plaintiffs understood defendants to be within the scope of the release. (*Id.* at 11-12.)

4

## II. Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may not grant summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (citing *Skousen v. Brighton High Sch.*, 305 F.3d 520, 526 (6th Cir. 2002)).

## III. Analysis

Defendants are not entitled to summary judgment, because there is, at minimum, a material dispute as to whether defendants were Watkins' agents under Michigan law.

Under Michigan law, "[a]gency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or

5

otherwise consents so to act." *See Varlesi v. Wayne State Univ.*, 909 F. Supp. 2d 827, 841 (E.D. Mich. 2012) (quoting Restatement (Third) of Agency § 1.01 (2006)).

To establish that an agency relationship exists, the party seeking to rely on the agency relationship must show three things: (1) the agent has the power to alter the legal relations between the principal and third parties; (2) the agent is a fiduciary of the principal regarding matters within the scope of the agency; and (3) the principal has the right to control the agent's conduct of matters entrusted to him. *See id.* at 842; *see also Eyerman v. Mary Kay Cosmetics, Inc.*, 967 F.2d 213, 219 (6th Cir. 1992); *W.C. Beardslee, Inc. v. Black*, No. 04-70344, 2005 U.S. Dist. LEXIS 22072, at *14 (E.D. Mich. Sept. 30, 2005). "Unless there is no genuine issue of material fact, the presence, or absence, of agency requires a factual analysis." *NLRB v. IBEW, Local 429*, 514 F.3d 646, 650 (6th Cir. 2008). The Court must "look beyond [any] agreement to the reality of the relationship between the parties." *See Eyerman*, 967 F.2d at 219.[2]

---

[2] Both parties rely on *Eyerman* for support, (see Dkt. 29 at 14; DKt. 40 at 27), but that case was decided under the agency law of Ohio. *See Eyerman*, 967 F.2d at 219. In any case, the *Eyerman* court relied on the Restatement (Second) of Agency, which Michigan courts also rely on to decide issues related to agency. *See Varlesi*, 909 F.

6

Defendants argue that prong one is established because plaintiffs' complaint "makes it clear that [plaintiffs] relied on the ability and authority of [defendant] Tate to speak on behalf of [] Watkins." (Dkt. 29 at 15 (citing *Bergin Financial, Inc. v. First American Title Co.*, 397 F. App'x 119 (6th Cir. 2010).)  The cited portion of *Bergin* does not apply, because it relates to whether plaintiff there had established the existence of *apparent* agency.  *See Bergin Financial, Inc.*, 397 F. App'x at 127 ("Under Michigan law, apparent agency only exists where the alleged principal [has] made a representation that leads the plaintiff to reasonably believe that an agency existed and to suffer harm on account of a justifiable reliance thereon.") (internal quotations omitted).  But the relevant question here is whether defendants had the *actual* authority to "bring about, modify, affect, accept performance of, or terminate contractual obligations between" plaintiffs and Watkins.  *See TAXI-ROCKFORD v. GMC*, No. 259565, 2006 Mich. App. LEXIS 1777, at *14 (Mich. Ct. App. May 30, 2006) (quoting *Saums v. Parfet*, 258 N.W. 235, 237 (Mich. 1935)); (*see also* Dkt. 29 at 15; Dkt. 29-7 at 7).

---

Supp. 2d at 841 n.13 ("The Restatement of Agency is routinely utilized by Michigan courts.") (citing cases).

7

At oral argument, defendants' counsel conceded that defendant Tate could not himself have signed the loan agreement (or, for that matter, other binding contracts) because this was allegedly "a limited agency relationship." (Dkt. 49 at 6.) Defendants' counsel also indicated that the alleged, limited agency relationship was "not in writing," but rather "was simply the way they had done things in the past." (*Id.* at 7.) Asked if he could "point to testimony or anything else that would show . . . what [defendant Tate's] limited authority was," defendants' counsel responded: "Only in the sense that what he did, he testified . . . that he did at the request and at the direction of [] Watkins." (*Id.*)

Defendants' counsel agreed that there was no evidence, "other than . . . [defendant] Tate's deposition[,] that would show . . . a limited agency relationship." (*See id.*) Without more, defendants fail to establish that, as a matter of law, they had the ability to "bring about, modify, affect, accept performance of, or terminate contractual obligations between" plaintiffs and Watkins. *See TAXI-ROCKFORD*, 2006 Mich. App. LEXIS 1777, at *14. Defendant Tate's alleged authority—characterized by defendants' counsel as authority to review "all of many [] Watkins' financials," and then "sit down with [plaintiffs'

8

representative]" to "explain to him, tell him whether they're worth X or Y, whether they're marketable[ or] unmarketable," (see Dkt. 49 at 6)—is insufficient. That plaintiffs relied on defendant Tate's representations in making the loan determination does not itself establish that defendant Tate, the alleged agent, had the authority to legally bind Watkins, the alleged principal.

Defendants fail to establish the first prong, which is fatal to their motion for summary judgment. But even if they had satisfied the first prong, defendants fail to establish that there is no genuine issue of fact as to the second and third prongs. Under prong two, defendants make one conclusory statement in their brief, without citing any case law, that defendant Tate, "as the financial advisor of [] Watkins, who worked with him on preparing financial documents, bore a fiduciary obligation to [] Watkins to carry out the responsibilities with respect to the supplying of these letters and assisting [plaintiffs' representative]'s due diligence evaluation." (Dkt. 29 at 16.) Plaintiffs responded that "[d]efendants do not even attempt to articulate the nature or type of fiduciary obligations [d]efendants allegedly owed to [] Watkins with respect to the back letters," (Dkt. 40 at 29), and defendants failed to

9

address the issue in their reply, except to state that "[a]ll required elements to prove an agency exists [sic]." (Dkt. 43 at 3.)

At oral argument, the Court asked defendants' counsel to clarify how the relationship was that of a fiduciary under Michigan law, and defendants responded:

> It's a fiduciary relationship because [defendant Tate] had access to all of the records that [plaintiffs' representative] had access to. He had the ability to protect those and do things which were in [] Watkins' best interests. He could not take those documents that [] Watkins gave to him and share them on the Internet, give them to anybody else. He had a duty of loyalty to [] Watkins to assist him with providing [plaintiffs' representative] with the information that [plaintiffs' representative] wanted. That was his fiduciary duty and not to anybody else or under any other circumstances.

(Dkt. 49 at 17.) Defendants have not satisfied their burden of establishing that defendants, in their role to provide independent verification of Watkins' financial condition, (see, for example, Dkt. 40 at 29), bore any fiduciary obligations to Watkins. *See W.C. Beardslee, Inc.*, 2005 U.S. Dist. LEXIS 22072, at *14 (burden is on the party relying on the alleged agency relationship to establish that agency existed).

Under prong three, defendants argue that they had the ability to control the actions of defendant Tate "in that Watkins provided the

10

information and reviewed all documents before they were sent out." (Dkt. 29 at 16.) Plaintiffs dispute this, citing bank letters and also Watkins' testimony that "[d]efendants had the ability 'to . . . independently determine if [Tate, as the Chief Executive Officer of Alamerica] was comfortable with the representations made [in the bank letters]." (Dkt 40 at 29 (alterations in original).) Given this competing evidence, there is at least a factual issue as to whether Watkins had the ability to control defendant Tate regarding the information contained in the letters.

Because defendants fail to establish any of the three prongs required under the agency law of Michigan, summary judgment is denied.

## IV. Conclusion

Defendants failed to establish that there is no genuine issue of material fact under any of the three prongs required under the agency law of Michigan. For the reasons set forth above, defendants' motion for summary judgment based on release, (Dkt. 29), is denied.

IT IS SO ORDERED.

Dated: December 2, 2015          s/Judith E. Levy

11

Ann Arbor, Michigan

JUDITH E. LEVY
United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 2, 2015.

s/Felicia M. Moses
FELICIA M. MOSES
Case Manager